UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
           :
UNITED STATES OF AMERICA, et al. ex rel. JOHN R.  :
BORZILLERI, M.D.,           :
           :
           Plaintiff,           :           15-CV-7881 (JMF)
           :
      -v-           :           MEMORANDUM OPINION
           :           AND ORDER
ABBVIE, INC., et al.,           :
           :
           Defendants.           :
           :
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this *qui tam* case, familiarity with which is presumed, Relator John R. Borzilleri alleges a wide-ranging scheme between pharmaceutical manufacturers and companies acting as "Pharmacy Benefit Managers" ("PBMs") to defraud Medicare Part D, a federal prescription-drug program, in violation of the False Claims Act ("FCA" or the "Act"), 31 U.S.C. § 3729 *et seq.*, and various state laws. Docket No. 148 ("SAC"). The United States (the "Government") declined to intervene in the case and now moves to dismiss the action. *See* Docket Nos. 19, 274.

      Although the FCA permits private plaintiffs to bring claims under the Act in the name of the United States, *see* 31 U.S.C. § 3730(b)(1), the Government retains significant control over any such litigation. As relevant here, the Act provides that "[t]he Government may dismiss" an action brought under its provisions "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). Lending truth to the Supreme Court's observation that "[t]he False Claims Act's *qui tam* provisions present many interpretive challenges," *Kellogg Brown & Root Servs.,*

*Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 1979 (2015), the statute is silent as to what standard of review, if any, applies to a decision by the Government to dismiss a case brought under the Act, and courts of appeals are divided on the issue. The Ninth and Tenth Circuits have held that the Government must demonstrate a "valid government purpose" for dismissal and "a rational relation between dismissal and accomplishment of [that] purpose." *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.* ("*Sequoia Orange*"), 151 F.3d 1139, 1145 (9th Cir. 1998) (internal quotation marks omitted); *accord Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936 (10th Cir. 2005). By contrast, the D.C. Circuit has described the Government's right to dismiss a relator's action under the FCA as "unfettered" (even as it noted that a "fraud on the court" might permit a court to look into the Government's reasons for dismissal). *Swift v. United States*, 318 F.3d 250, 252-54 (D.C. Cir. 2003). The Second Circuit has not yet weighed in on the issue. *See, e.g.*, *United States ex rel. Piacentile v. Amgen Inc.*, No. 04-CV-3983 (SJ), 2013 WL 5460640, at *3 (E.D.N.Y. Sept. 30, 2013); *United States ex rel. Pentagen Techs. Int'l Ltd. v. United States*, No. 00-CV-6167 (DAB), 2001 WL 770940, at *7 (S.D.N.Y. July 10, 2001).[1]

The Court need not take a side in the dispute, however, because it concludes that the Government may dismiss the case even under the more stringent standard articulated in *Sequoia Orange*. That is, the Government demonstrates at least one "valid government purpose" for seeking dismissal: Borzilleri's continued prosecution of the case — assuming it would survive the other motions to dismiss pending before the Court — would impose substantial burdens on

---

[1] The Second Circuit has cited *Sequoia Orange*, but only in *dicta* and in a case that was later reversed. *See United States ex rel. Stevens v. Vermont Agency of Nat. Res.*, 162 F.3d 195, 201 (2d Cir. 1998) ("[A]lthough the *qui tam* plaintiff must be given a hearing, the court need not, in order to dismiss, determine that the government's decision is reasonable." (citing *Sequoia Orange*, 151 F.3d at 1145)), *rev'd on other grounds*, 529 U.S. 765 (2000).

2

government resources.[2] According to the Government, attorneys from multiple offices would be required to monitor the litigation and likely coordinate third-party discovery, rather than pursue other (and in the Government's view, more meritorious) cases. Additionally, program staff from the Centers for Medicare and Medicaid Services ("CMS"), the agency within the Department of Health and Human Services that administers Medicare Part D, would likely have to divert time and resources to respond to discovery requests. *See* Docket No. 275 ("Gov't Mem."), at 13-16. The Government's determination that it would prefer to avoid these costs and expend its finite resources elsewhere is, as many courts have recognized, a "valid government purpose" rationally related to dismissal of the case. *See, e.g.*, *Sequoia Orange*, 151 F.3d at 1146 ("The district court . . . properly noted that the government can legitimately consider the burden imposed on the taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs."); *Swift*, 318 F.3d at 254 (noting that dismissal would also be proper under *Sequoia Orange* because the Government's interest in not "expending resources monitoring the case, complying with discovery requests, and so forth" was "a legitimate objective, and dismissal of the suit furthered that objective").

Borzilleri's arguments to the contrary are unpersuasive. The fact that the Government *could* recover more in damages than it expends in resources, *if* he were to eventually prevail, *see* Docket No. 281 ("Relator Mem."), at 10, does not mean that avoiding resource expenditures now is not a "valid government purpose." Indeed, courts applying the *Sequoia Orange* standard have made clear that the Government's cost concerns are a valid justification for dismissal even where "the FCA claims against the defendants [are] meritorious." *Sequoia Orange*, 145 F.3d at 1143;

---

[2] Because the burden of further litigation is a valid and sufficient justification for the Government's dismissal, the Court need not and does not reach the Government's other proffered justifications. *See* Gov't Mem. 16-18.

3

*see, e.g.*, *United States v. EMD Serono, Inc.*, 370 F. Supp. 3d 483, 490-91 (E.D. Pa. 2019) 490-91 (reiterating that "[p]reserving litigation costs is a valid interest even where the claims may have merit," and collecting cases); *United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 4:17-CV-000053 (GHD), 2019 WL 1305069, at *4 (N.D. Miss. Mar. 21, 2019) (same).

Because the Government offers a valid purpose for dismissal, the burden shifts to Borzilleri to show that the dismissal is nonetheless "fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange*, 145 F.3d at 1145 (internal quotation marks omitted). This he fails to do. Borzilleri offers a hodgepodge of theories, the most coherent subset of which can be lumped together as a "failure to investigate" — in a nutshell, that the Government's decision to dismiss the case, like its decision not to intervene, is arbitrary because the Government failed to thoroughly investigate his allegations in the first place.[3] But none of Borzilleri's allegations about the Government's investigative choices demonstrate that its stated rationale is fraudulent, arbitrary and capricious, or illegal. The Government's memoranda reveal, and the Court has no basis to doubt, that the Government undertook a lengthy, costly, and substantial investigation into Borzilleri's claims that spanned several years and multiple offices and agencies. *See* Gov't Mem. 4, 16; Docket No. 292 ("Gov't Reply"), at 5-6; *see also EMD Serono*, 370 F. Supp. 3d at 489 & n.15 (relying on representations in the Government's briefing to conclude that the Government "expended substantial time and resources" before determining "that it [was] better to use its resources pursuing other claims"); *United States ex rel. Toomer v. TerraPower, LLC*,

---

[3] More specifically, Borzilleri contends that the Government "failed to aggressively pursue" the "central allegations" in his complaint, which relate to a kickback scheme between manufacturers and PBMs; failed to investigate his allegations of fraud relating to catastrophic coverage; focused on the PBM defendants rather than the more culpable manufacturer defendants; deposed only one defendant witness; declined to interview other relevant witnesses; and ignored "major new evidence" that has come to light since the Government declined to intervene in March 2018. Relator Mem. 19-20, 21-26.

No. 4:16-CV-00226 (DCN), 2018 WL 4934070, at *6 (D. Idaho Oct. 10, 2018) (same). Borzilleri's subjective disagreement with the Government's investigative strategy and ultimate decision does not provide the Court with a basis to second-guess the Government's decision to dismiss the case.

Borzilleri's remaining arguments fare no better. First, the Government's inability or unwillingness to provide him with a non-fraudulent explanation for "massive" increases in Defendants' drug prices, Relator Mem. 19, does not demonstrate that its stated reason for dismissing the case is somehow fraudulent, arbitrary and capricious, or illegal. Second, Borzilleri fails to clearly articulate how (1) the Government's proffered rationale for not intervening in his case was "false" and (2) the Government "verif[ied]" the entire massive scheme he alleges, but then declined to act on it. *See id.* at 18-19. And finally, his allegations of stonewalling by CMS and conflicts of interest among its leadership, *see id.* at 20-21, do not rise above the level of speculation, *see United States ex rel. Nasuti v. Savage Farms, Inc.*, No. 12-CV-30121 (GAO), 2014 WL 1327015, at *12 (D. Mass. Mar. 27, 2014) (rejecting a relator's allegations that "nepotism or political connections played [a] role in the Government's decision" to dismiss as "little more than unsupported speculation"). In sum, nothing put forward by Borzilleri suggests, let alone shows, that the Government's stated reason for dismissing this action is fraudulent, arbitrary and capricious, or illegal. And because he fails to even "present[] a colorable claim" on that score, he is not entitled to discovery or an evidentiary hearing. *See, e.g.*, *Ridenour*, 397 F.3d at 931 (noting that a relator is not entitled to a hearing absent a showing of "substantial and particularized need" (internal quotation marks omitted)); *accord United States ex rel. Nicholson v. Spigelman*, No. 10 C 3361, 2011 WL 2683161, at *3 (N.D. Ill. July 8, 2011); *Toomer*, 2018 WL 4934070, at *6.

By its terms, the FCA vests the Government with broad discretion to end this action "notwithstanding" Borzilleri's "objections." 31 U.S.C. § 3730(c)(2)(A). Under either *Swift* or *Sequoia Orange*, the Government has exercised that discretion appropriately, and Borzilleri has "been . . . provided . . . with an opportunity for a hearing" on the Government's motion. 31 U.S.C. § 3730(c)(2)(A); *see, e.g.*, *Greene v. IRS*, No. 1:08-CV-0280 (LEK), 2008 WL 5378120, at *2 (N.D.N.Y. Dec. 23, 2008) ("This Court's consideration of the arguments raised in the Plaintiffs' opposition has provided them with an opportunity to be heard on the Government's Motion."), *aff'd*, 348 Fed. App'x 625 (2d Cir. 2009). That is all the statute requires. Accordingly, Borzilleri's FCA claims must be and are dismissed.[4] That leaves only Borzilleri's common-law claims brought on behalf of the United States and his claims under various state analogues to the FCA. The former — claims for unjust enrichment and common-law fraud, *see* SAC ¶¶ 915-21 — are dismissed because "the FCA does not give relators the right to assert common law claims on behalf of the United States." *United States ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 451-52 (S.D.N.Y. 2001) (internal quotation marks omitted). As for the latter — twenty-eight claims under various state-law analogues to the FCA, *see* SAC ¶¶ 831-914 — the Court declines to exercise supplemental jurisdiction in light of the fact that the sole federal claims have been dismissed. *See, e.g.*, *United States ex rel. Vierczhalek v. MedImmune, Inc.*, 345 F. Supp. 3d 456, 466 (S.D.N.Y. 2018) (declining to assert supplemental jurisdiction over "various state law false claims provisions" after dismissing the relator's federal claims on the merits).

---

[4]  Such dismissal is, of course, without prejudice as to the Government. *See, e.g.*, *Toomer*, 2018 WL 4934070, at *6-7.

For the foregoing reasons, the Government's motion to dismiss is GRANTED, and Borzilleri's claims are dismissed (with prejudice in the case of his claims under the FCA and without prejudice to re-filing in state court as to his claims under state law).[5] In light of that disposition, Defendants' motions to dismiss (Docket Nos. 258, 260) are DENIED as moot. The Clerk of Court is directed to terminate all motions and close the case.

SO ORDERED.

Dated: July 16, 2019
New York, New York

JESSE M. FURMAN
United States District Judge

---

[5] In addition to seeking dismissal, the Government asks the Court in passing to strike Borzilleri's declarations and brief because they contain privileged material. *See* Gov't Reply 7. In light of the Government's delay in seeking that relief (not to mention the cursory fashion in which it does so), that request is denied. *See, e.g.*, *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *2-3 (S.D.N.Y. July 11, 2019) (noting that "where . . . a party fails to take immediate steps to request that publicly filed materials be sealed, its request to redact or seal may be denied for that reason.").

7